# SUPPLEMENT.

OPINION OF THE JUSTICES TO THE SENATE.

*Constitutional Law,* Appropriation of money, Separation of powers of government, Expenditure of money, General Court, Executive and administrative work of the Commonwealth, Appointment of civil officers. *General Court. Public Officer. Words, "Civil officers," "Office."*

Legislation proposed in a bill for the appropriation of money from the General Fund for the second fiscal year of a biennium for transfers to items of appropriation, other than for personal services, to provide for unforeseen conditions of an emergency nature, such transfers to be made on order of the Governor after written consent granted by a commission or committee, would confer executive powers and would be constitutional provided the members of the commission or committee were not disqualified under art. 65 of the Amendments to the Constitution of the Commonwealth or otherwise and were appointed by the Governor, but not by the Speaker of the House and President of the Senate; the chairman of the commission on administration and finance might serve as a member *ex officio.*

On February 1, 1939, the Senate adopted the following order:

WHEREAS, There is pending before the General Court a bill entitled "An Act making certain amendments and additions to the laws of the Commonwealth relative to the State budget which have become necessary or advisable by reason of the initiative amendment to the Constitution providing for biennial sessions of the General Court and for a biennial budget" printed as current House document numbered seventeen hundred and twenty-three, as amended by the Senate, a copy whereof is hereto annexed; and

WHEREAS, Various amendments to said bill have been proposed, which proposed amendments appear in the Journal of the Senate for February first, nineteen hundred and thirty-nine, copies of such amendment and proposed amendments being herewith submitted; and

WHEREAS, Grave doubt exists as to the constitutionality of said bill and proposed amendments, if enacted into law; therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the Senate on the following important questions of law: —

1. Is it constitutionally competent for the General Court, under that clause of Article IV of Section I of Chapter I of Part the Second of the Constitution of the Commonwealth which empowers it ". . . to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions . . .", to appropriate for the second fiscal year of each two year period a stated amount for transfer to items of appropriation for the purpose of providing for unforeseen conditions of an emergency nature where such action cannot be postponed until the next regular session of the General Court, and to provide that such transfers shall be made on the order of the Governor, after written consent by a special recess commission constituted as set forth in subsection nine C of section six of said bill?

2. Does that provision of subsection nine C of section six of said bill which provides for the granting of written consent, by a body established by the General Court, to an order of the Governor for a transfer of funds to items of appropriation, before such transfer can be made, provide for the exercise by such body of executive powers within the meaning of the Constitution of the Commonwealth; and, if so, is it constitutionally competent for the General Court, in view of Article XXX of Part the First of said Constitution, to establish such a body and to grant to it substantially the powers provided by said subsection nine C?

3. If such provision does provide for the exercise of executive powers and if said subsection nine C were amended so as to provide for the appointment, to the body thereby created, by the President of the Senate and the Speaker of the House of Representatives of three and five persons, respectively, instead of three members

of the Senate and five members of the House of Representatives, as provided in said subsection, is it constitutionally competent for the General Court, in view of Article XXX of Part the First of said Constitution, to establish such a body and to grant to it certain powers, all as provided by said subsection as so proposed to be amended?

4. If the provision referred to in Question 2 does provide for the exercise of executive powers and if said subsection nine C were amended so as to provide that all the appointive members of the body thereby created should be appointed thereto by the Governor, is it constitutionally competent for the General Court, in view of Article XXX of Part the First of said Constitution, to establish such a body and to grant to it certain powers, all as provided by said subsection as so proposed to be amended?

5. Does that provision of subsection nine C of section six of said bill which provides for the granting of written consent, by a body established by the General Court, to an order of the Governor for a transfer of funds to items of appropriation, before such transfer can be made, provide for the exercise of legislative powers by such body, within the meaning of the Constitution of the Commonwealth; and, if so, is it constitutionally competent for the General Court to delegate, to the extent provided by said subsection, the exercise of such powers?

6. If such provision does provide for the exercise of legislative powers, is it constitutionally competent for the General Court to delegate the exercise of such powers to the extent provided in said subsection nine C, if said subsection were amended so as to give such powers to a recess committee of the General Court instead of a recess commission constituted as provided in said subsection of said bill as printed?

7. Is the existence of unforeseen conditions of an emergency nature where such action cannot be postponed until the next regular session of the General Court essential to the constitutionality of the grant of power to the Governor and to the recess commission contained in said

subsection nine C; and, if so, is such emergency negatived by the requirement therein that no such transfer may be made until at least seven days subsequent to the submission to the Governor of the request for such a transfer?

8. Does the provision of said subsection nine C, authorizing the appointment as members of the commission thereby established of members of the General Court, provide for the appointment of such members to offices created during the term for which they were elected, in violation of any provision of Article LXV of the Amendments to the Constitution of the Commonwealth?

9. If said section six, containing said subsection nine C, were amended by striking out, in lines 27 and 28, the words "providing for unforeseen conditions of an emergency nature where such action cannot be postponed" and inserting in place thereof the words: — "providing for unforeseen conditions where such action should not be postponed", would said subsection C contain an unconstitutional delegation of legislative power?

10. If said section six, containing said subsection nine C, were amended by striking out, in lines 27 and 28, the words "providing for unforeseen conditions of an emergency nature where such action cannot be postponed" and inserting in place thereof the words: — "providing for unforeseen conditions where such action should not be postponed", would it be constitutionally competent for the General Court to provide for such a recess commission and to grant to it such powers, or any of them, in view of the provisions of Article XXX of Part the First of the Constitution of the Commonwealth?

On February 4, 1939, the order was transmitted to the Justices, who, on February 27, 1939, returned the following answers:

To The Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order

adopted by the Senate on February 1, 1939, a copy of which is hereto annexed.

The questions relate to a bill now pending before the General Court (House, No. 1723), which is entitled "An Act making certain amendments and additions to the laws of the Commonwealth relative to the State budget which have become necessary or advisable by reason of the initiative amendment to the Constitution providing for biennial sessions of the General Court and for a biennial budget." This bill has been amended by the Senate, and further amendments have been proposed and are pending in the Senate. Copies of the bill, the amendment thereto and the proposed amendments thereto are annexed to the order. The questions submitted relate specifically to a new section (§ 9C) to be added by the bill to G. L. (Ter. Ed.) c. 29, and to proposed amendments to this new section.

The new section (§ 9C) to be added by the bill to said c. 29 provides that "In the general appropriation bill for each biennium there shall be appropriated from the General Fund for the second fiscal year thereof a stated amount for transfers to items of appropriation, other than for personal services, for the purpose of providing for unforeseen conditions *of an emergency nature where such action cannot* [italics ours] be postponed until the next regular session of the general court, such transfers to be made on order of the governor after written consent has been granted by a special recess commission," and prescribes the manner in which such commission shall be chosen and the procedure to be followed in effecting a transfer. (One of the proposed amendments to the bill would substitute in this section for the italicized words "of an emergency nature where such action cannot" the words "where such action should not.")

The "special recess commission" according to the bill is to consist of "the chairman of the commission on administration and finance, ex officio, three members of the senate appointed by the president of the senate and five members of the house of representatives appointed by the speaker of the house of representatives, the appointees of said presi-

dent to be chosen from members of the two leading political parties, as defined in section one of chapter fifty, and the appointees of said speaker to be chosen from members of such parties, but not more than three to be chosen by said speaker from the same party." By one of the proposed amendments to the bill the special recess board would be described as a "special recess committee," and "the chairman of the commission on administration and finance" would not be a member thereof. By another of the proposed amendments to the bill the "special recess commission" would consist of the chairman above referred to "ex officio" "and eight persons appointed by the governor." By still another proposed amendment to the bill the "special recess commission" would consist of this chairman "ex officio" and "three persons appointed by the president of the senate and five persons appointed by the speaker of the house of representatives."

It is apparent that the bill and the proposed amendments thereto are directed to making changes in the laws respecting the budget in order to adapt such laws to the situation resulting from the adoption of the Seventy-second Amendment to the Constitution of the Commonwealth providing for biennial sessions, and deal particularly with the budget for the second fiscal year of the "biennium," defined in the bill as "a period of two consecutive fiscal years beginning December first in an even-numbered year."

Obviously the bill is not an "appropriation bill," "general" or "special," under the constitutional provisions relating to the budget and appropriations. Constitution, Amendments, art. 63. Section 9C, to be added by the bill to G. L. (Ter. Ed.) c. 29, purports to direct the General Court to make, in each biennium, an appropriation for a stated purpose. See *Steward Machine Co.* v. *Davis*, 301 U. S. 548, 577, 578. Compare *Opinion of the Justices*, 300 Mass. 630, 635. Other action by the General Court in conformity with said art. 63 would be required to make an effective appropriation. The bill, however, if enacted, would not bind the General Court to make such an appropriation. One General Court cannot bind itself or its suc-

cessors in this manner. *Opinion of the Justices*, 294 Mass. 616, 622. But we perceive no constitutional objection to the passage of a bill, such as is submitted for our consideration, embodying a declaration of policy and prescribing a method of dealing with any appropriation that may be made in conformity with its terms, provided that such terms do not conflict with any constitutional provision. See, for somewhat similar legislation, G. L. (Ter. Ed.) c. 6, § 8, referred to in *Opinion of the Justices*, 294 Mass. 616, 622; G. L. (Ter. Ed.) c. 81, § 26, as amended, and c. 90, § 34, as amended, referred to in *Opinion of the Justices*, 300 Mass. 630, 637. See also the provision of art. 63, § 2, of the Amendments, as modified by art. 72 of the Amendments, providing that the budget upon which the general appropriation bill is based (§ 3) "shall contain a statement of all proposed expenditures of the commonwealth for the fiscal year, including those already authorized by law." The bill, if enacted, and any act appropriating money in conformity with its terms must be read together in determining the validity of the legislation. While the order does not state that any bill is pending providing for an appropriation in conformity with the terms of said § 9C or any of the proposed amendments thereto, we think that the questions of law submitted are to be regarded as relating to "pending matters, in order that assistance may be gained in the performance of present duties." See *Opinion of the Justices*, 216 Mass. 605; 301 Mass. 615, 617. See also *Opinion of the Justices*, 190 Mass. 611, 612.

The ten questions of law submitted present two fundamental matters for consideration: (1) Can the General Court constitutionally appropriate money for the purpose stated in the bill (or in the alternative for the purpose stated in one of the proposed amendments thereto) to be transferred, as therein provided, by the Governor, with the consent of a recess commission or committee constituted in the manner provided by the bill or by some one of the proposed amendments thereto? (2) If such an appropriation can be made, is there constitutional objection to any one or more of the ways, as provided by the

bill or the proposed amendments thereto, in which such commission or committee is to be constituted?

The power to appropriate money of the Commonwealth is a legislative power. Under the Constitution it can be exercised only by the General Court and in the particular manner prescribed. "An underlying feature of our form of government is that the power to raise money, levy taxes and control the expenditure of public funds is vested in the General Court. Constitution, Part the First, art. 23; Part the Second, c. 1, § 1, art. 4, § 3, art. 7." *Opinion of the Justices*, 294 Mass. 616, 621. The Constitution, Part II, c. 2, § 1, art. 11, provides that "No moneys shall be issued out of the treasury of this commonwealth, and disposed of . . . [with exceptions not here material] but by warrant under the hand of the governor for the time being, with the advice and consent of the council, for the necessary defence and support of the commonwealth; and for the protection and preservation of the inhabitants thereof, agreeably to the acts and resolves of the general court." In *Opinion of the Justices*, 13 Allen, 593, it was said that, under this provision, "no money can be drawn from the treasury of the Commonwealth by the warrant of the governor, with the advice and consent of the council, except it be 'agreeably to the acts and resolves of the general court.'" Language similar to that used in said art. 11 appears also in Part II, c. 1, § 1, art. 4. See also *Opinion of the Justices*, 208 Mass. 610, 613; 297 Mass. 577, 580; 300 Mass. 630, 636. The constitutional provision relating to the budget and appropriations restricts action of the General Court in making appropriations and imposes a duty upon the Governor with respect to appropriations. Art. 63 of the Amendments. *Opinion of the Justices*, 300 Mass. 630. But neither this provision nor the provision applicable to all bills relating to the approval thereof by the Governor or the passage thereof over his veto (Constitution, Part II, c. 1, § 1, art. 2; *Tuttle* v. *Boston*, 215 Mass. 57, 58; compare art. 63, § 5, of the Amendments; *Opinion of the Justices*, 294 Mass. 616) prevents the power of appropriation being a legislative power. See *Springer* v. *Philippine Islands*, 277 U. S. 189,

202.  However difficult it may be to draw the line between legislative and other powers, there can be no doubt as to the side of the line upon which the power of appropriation falls.

The appropriation that the bill contemplates shall be made by the General Court in the exercise of this legislative power of appropriation is to provide for "unforeseen conditions" that may arise before the next regular session of the General Court in relation to matters for which "items of appropriation" have been included in an appropriation bill which will have been enacted.  It is to be assumed that such "items of appropriation" will be made for legitimate objects.  The effect of transfers, such as are authorized by the bill, to these "items of appropriation" would be to increase the amounts of money available for expenditure for the objects of such "items of appropriation" by making available for this purpose money appropriated to provide for "unforeseen conditions."  It cannot be said to be beyond the power of the General Court to make an appropriation to meet "unforeseen conditions," the possibility of which reasonably may be anticipated, even though such provision might be made, when the conditions actually arise, by action of the General Court at a special session.  See Constitution, Part II, c. 1, § 1, art. 1; c. 2, § 1, art. 5; art. 10 of the Amendments; art. 64, § 3, of the Amendments; art. 72, § 1, of the Amendments. *Opinion of the Justices*, 294 Mass. 623.  As was said in *Lowell* v. *Oliver*, 8 Allen, 247, 257, "If the object of the appropriation is a legitimate one, it is quite immaterial . . . whether it is to anticipate expenditures which the future requirements of the public service may render expedient or necessary."  The object of the appropriation contemplated by the bill includes and is limited to the specific objects of the "items of appropriation"—which, we assume, will be legitimate—with an opportunity for choice of the particular object or objects within this group of specific objects for which money appropriated to meet "unforeseen conditions" shall be used.  The basic question, therefore, is whether under the Constitution such opportunity for choice may be conferred by the General Court upon the

Governor, acting with the consent of the recess board constituted as provided in the bill or any of its proposed amendments.

The General Court cannot constitutionally confer such a power of choice upon the Governor acting with the consent of such a recess body if this power amounts to a power of appropriation. The legislative power to appropriate money of the Commonwealth cannot be delegated by the General Court to any of its members, or to any executive or administrative officer, officers, or board. This power of appropriation comes within the general principle that the "Legislature cannot delegate its law making power or any power explicitly reposed in it." *Attorney General* v. *Brissenden*, 271 Mass. 172, 180. See also *Wyeth* v. *Cambridge Board of.Health*, 200 Mass. 474, 481; *Boston* v. *Chelsea*, 212 Mass. 127, 128;. *Opinion of the Justices*, 286 Mass. 611, 617–618. The power to appropriate money of the Commonwealth is explicitly reposed in the General Court by the constitutional provisions already referred to, and is within the general legislative authority. However narrow the object, the legislative power to appropriate money of the Commonwealth therefor cannot be delegated by the General Court on the ground that the matter is one of local interest or on any other ground. Compare *Brodbine* v. *Revere*, 182 Mass. 598, 600–601; *Commonwealth* v. *Slocum*, 230 Mass. 180, 190; *Opinion of the Justices*, 286 Mass. 611, 617–618. And the bill does not provide for the distribution of money collected for a specific purpose. Compare *Dane* v. *Treasurer & Receiver General*, 237 Mass. 50, 52; *Knights* v. *Treasurer & Receiver General*, 237 Mass. 493, 496; *Howes Brothers Co.* v. *Unemployment Compensation Commission*, 296 Mass. 275, 290. See *Opinion of the Justices*, 300 Mass. 630, 637–639. If, therefore, the power conferred by the bill upon the Governor acting with the consent of a recess board is a power of appropriation, the bill, if enacted in any of the forms proposed, would be unconstitutional because providing for a delegation of legislative power. See *People* v. *Tremaine*, 252 N. Y. 27, 44.

We are of opinion, however, that the power conferred by

the bill on the Governor acting with the consent of the recess body is not the legislative power of appropriation but rather is an executive or administrative power of expenditure. These powers are not mutually exclusive. Undoubtedly the General Court in the exercise of its legislative power could appropriate money of the Commonwealth to meet "unforeseen conditions" arising in connection with specific objects of appropriation and determine the particular objects for which the money so appropriated should be used. Indeed an intention that appropriations shall be itemized is clearly shown by the Constitution, especially by the provisions of art. 63 of the Amendments relating to the budget and appropriations, that the "general court may increase, decrease, add or omit items in the budget," § 3, and that the "governor may disapprove or reduce items or parts of items in any bill appropriating money." § 5. See *Opinion of the Justices*, 294 Mass. 616, 620–621. Even apart from these provisions added to the Constitution by amendment, some statement of the specific object of appropriation appears to have been contemplated. See *Lowell* v. *Oliver*, 8 Allen, 247, 257. But the precise extent to which appropriations shall be itemized in an appropriation bill is not prescribed by the Constitution. And art. 63 authorizes the General Court to prescribe by law the form of the budget upon which the general appropriation bill is based. § 2. See G. L. (Ter. Ed.) c. 29, § 6, as amended. It is clear that, however minutely appropriations are itemized, some scope is left for the exercise of judgment and discretion by executive or administrative officers or boards in the expenditure of money within the limits of the appropriation. And it is also clear that the General Court in the exercise of its legislative power of appropriation has a broad scope for determining whether it will prescribe in detail the particular purposes for which money appropriated shall be expended or, on the other hand, will permit executive or administrative officers or boards to exercise judgment and discretion within a wide field in the expenditure of money appropriated for a given object to accomplish the general purposes of the appropriation. The choice of the latter alternative has been made

frequently. See *James Millar Co.* v. *Commonwealth*, 251 Mass. 457; *Maher* v. *Commonwealth*, 291 Mass. 343; *Boston & Albany Railroad* v. *Commonwealth*, 296 Mass. 426; *Willar* v. *Commonwealth*, 297 Mass. 527. Such a choice — at least within reasonable limits — does not amount to an unconstitutional delegation of legislative power. The General Court merely leaves to executive officers or boards the question of administration as to the means by which the object of an appropriation may be accomplished. See *Codman* v. *Crocker*, 203 Mass. 146, 154–155. See also *Opinion of the Justices*, 261 Mass. 556, 606–607.

In accordance with this principle the General Court may, we think, make itemized appropriations of money for the work of one of the State departments organized in accordance with the requirements of art. 66 of the Amendments, and a further appropriation reasonable in amount to meet "unforeseen conditions" arising in connection with the objects of the itemized appropriations, to be expended by the officer or officers in charge of such a department for such of the objects of the itemized appropriations as the officer or officers in the exercise of judgment and discretion shall determine. The appropriation contemplated by the bill differs from such an appropriation to meet "unforeseen conditions" arising within a department only in degree and in the persons authorized to expend the money appropriated. Moreover, said art. 66 provides that "Such departments shall be under such supervision and regulation as the general court may from time to time prescribe by law." The Governor is the "supreme executive magistrate." Constitution, Part II, c. 2, § 1, art. 1. He has executive powers in the exercise of which the General Court cannot interfere without violating art. 30 of the Declaration of Rights providing that "the legislative department shall never exercise the executive and judicial powers, or either of them." But the General Court may by law, without delegating legislative power, confer other powers of an executive or administrative nature upon the Governor. *Lowell* v. *Oliver*, 8 Allen, 247, 258. *Martin* v. *Witherspoon*, 135 Mass. 175, 176. *Rice* v. *The Governor*, 207 Mass. 577. *Opinion of the Jus-*

*tices*, 208 Mass. 610. In the opinion last cited it was said, at page 613: "The Legislature, in the exercise of its functions, may pass laws calling for action by the executive department, as it may pass laws calling for action by the judicial department. It is when it attempts to interfere with action taken by the executive department, or the judicial department, under existing laws, and thus to project itself into a field of action which belongs to another department, that art. 30 of the Declaration of Rights is violated." The General Court, therefore, may by law, under authority of said art. 66, if not apart therefrom, confer upon the Governor supervisory powers of an executive or administrative nature over State departments. And we are of opinion that among the supervisory powers which may be so conferred is the power to determine the particular objects of appropriation in the several State departments organized under said art. 66 for which shall be expended, in addition to amounts specifically appropriated therefor, money appropriated — at least if reasonable in amount — to meet "unforeseen conditions" arising in connection with such objects of appropriation generally. Similar principles are applicable to agencies of the Commonwealth other than departments. We have not considered in detail whether there are any such agencies to which these principles do not apply. See *Opinion of the Justices*, 275 Mass. 580, 582.

It is to be observed that for some years there have been statutes authorizing the making of transfers of money appropriated for the purpose "to such appropriations as have proved insufficient" upon the recommendation of the State auditor or comptroller with the approval of the Governor and Council. See St. 1908, c. 549; G. L. c. 6, § 8; St. 1923, c. 362, § 8; St. 1931, c. 426, § 61; G. L. (Ter. Ed.) c. 6, § 8; St. 1936, c. 304, § 2 (item 101). Compare St. 1890, c. 415. We are not aware that the validity of these statutes has ever been challenged, and it appears to have been assumed in *Opinion of the Justices*, 294 Mass. 616. That action of the Governor and Council rather than of the Governor alone was there required is not a ground for distinguishing these statutes from the bill now under considera-

tion in its general application. The power conferred upon the Governor by the bill does not depend for its validity upon the constitutional provision relating to the issuing of money out of the treasury of the Commonwealth by "warrant under the hand of the governor . . . with the advice and consent of the council." Constitution, Part II, c. 2, § 1, art. 11. See *Boston & Albany Railroad* v. *Commonwealth*, 296 Mass. 426. Cases arising in other jurisdictions under constitutional provisions in different form furnish little aid in interpreting the provisions of the Constitution of this Commonwealth. See, for example, *Peabody* v. *Russel*, 302 Ill. 111; *State* v. *Carter*, 167 Okla. 32. However, *State* v. *Zimmerman*, 183 Wis. 132, supports the conclusion above reached, and *People* v. *Tremaine*, 252 N. Y. 27, is not in conflict therewith.

Since the power conferred by the bill upon the Governor is not an executive power inherent in the office of Governor as the "supreme executive magistrate" as constituted by the Constitution, the General Court in conferring such a power upon him may impose reasonable limitations upon the exercise thereof. See *Opinion of the Justices*, 13 Allen, 593; 154 Mass. 603; 294 Mass. 616, 619–621; *Bradley* v. *Zoning Adjustment Board of Boston*, 255 Mass. 160, and cases cited at pages 164–170. Compare G. L. (Ter. Ed.) c. 6, § 8. See also *Murphy* v. *Casey*, 300 Mass. 232. The bill, whether or not amended as proposed, imposes three limitations upon the power thereby conferred upon the Governor to transfer money appropriated in accordance with its terms. Such transfers may be made only (a) to objects for which appropriations have been made, (b) to provide for "unforeseen conditions," and (c) with the consent of a special recess commission or committee.

The first two limitations clearly are reasonable. Whether they are essential to the validity of the proposed act we need not consider since there is no suggestion that either of them be omitted. It is enough to say that the limitation to "unforeseen conditions," whether described as in the bill or in one of the proposed amendments thereto, together with the limitation of transfer to objects for which appro-

priations have been made, is sufficient to render the bill constitutional if the limitation requiring consent of a special recess commission or committee is constitutional.

In our opinion the limitation requiring consent of a "special recess commission" or "special recess committee" is constitutional if the commission or committee is constituted in a constitutional manner. See *Opinion of the Justices*, 13 Allen, 593. Whether this recess body is styled a "commission." or a "committee" is of no significance. The question of constitutionality must be determined as matter of substance and not of form. This recess body is not a "recess committee or commission" in the sense in which those words are used in art. 65 of the Amendments. Unlike the powers that may be conferred upon such bodies, the power conferred by the bill upon this recess body is not incidental to the exercise of legislative powers. It is not one of the "incidental powers which . . . [the General Court] may exercise itself in aid of its primary functions" or delegate but which "do not partake of the nature of law making." See *Attorney General* v. *Brissenden*, 271 Mass. 172, 181. If the power conferred by the bill on this recess body were to be regarded as legislative in nature, it would be a legislative power of appropriation which cannot be delegated. But we are of opinion that the power so conferred, like the related power conferred upon the Governor, is executive or administrative in nature and may be conferred upon an executive or administrative board, that such a board may be established by law outside the State departments as "officers serving directly under the governor" in accordance with the provisions of art. 66 of the Amendments, and that, the bill and the proposed amendments thereto providing for a special recess commission or committee purport to establish such a board.

The question remains whether the provisions of the bill or of any of its amendments with respect to membership on such commission or committee are constitutional. By Part II, c. 1, § 1, art. 4, of the Constitution the General Court is empowered "to name and settle annually, or provide by fixed laws, for the naming and settling all civil

officers within the said commonwealth; the election and constitution of whom are not hereafter in this form of government otherwise provided for." See *Brown* v. *Russell,* 166 Mass. 14, 25. We are of opinion that members of such a commission or committee upon which executive or administrative power is conferred as provided in the bill would be "civil officers" within the meaning of this provision of the Constitution, and that the position of such a member would be an "office" within the meaning of art. 65 of the Amendments providing that "No person elected to the general court shall during the term for which he was elected be appointed to any office created . . . during such term," even though the period of service of such member is limited by the bill to "that part of the second fiscal year of the biennium when the general court is not in session." See *Opinion of the Justices,* 167 Mass. 599, 600; *Attorney General* v. *Drohan,* 169 Mass. 534, 535; *Attorney General* v. *Tillinghast,* 203 Mass. 539, 543–544; *Bradley* v. *Zoning Adjustment Board of Boston,* 255 Mass. 160, 165–166.

We see no reason why it may not be provided by law that the chairman of the commission on administration and finance shall be a member of the commission or committee *ex officio.* Such a provision would amount merely to conferring executive or administrative power upon the incumbent of an existing executive or administrative office. See G. L. (Ter. Ed.) c. 7, §§ 2, 3; *Taft* v. *Adams,* 3 Gray, 126, 130; *Goodale* v. *County Commissioners,* 277 Mass. 144, 149–150. And it seems clear that under Part II, c. 1, § 1, art. 4, of the Constitution the Governor may be authorized by law, as provided in one of the proposed amendments to the bill, to appoint other members, provided they are not ineligible for the office. See *Brown* v. *Russell,* 166 Mass. 14, 25.

We are of opinion, however, that the power of appointing such members cannot be conferred by law upon the President of the Senate and the Speaker of the House of Representatives, whether or not such members are required to be chosen from among the members of the Senate and of the House. "The power to appoint and the power

to remove officers are in their nature executive powers."
*Murphy* v. *Webster*, 131 Mass. 482, 488. *Attorney General*
v. *Varnum*, 167 Mass. 477, 480. *Driscoll* v. *Mayor of Somer-
ville*, 213 Mass. 493, 494. *Stiles* v. *Municipal Council of
Lowell*, 233 Mass. 174, 181. *Bailen* v. *Assessors of Chel-
sea*, 241 Mass. 411, 416. *Opinion of the Justices*, 300 Mass.
596, 599. The soundness of this general principle is not
impaired by the fact that the Constitution explicitly em-
powers the General Court "to name and settle annually
. . . all civil officers within the said commonwealth," Part
II, c. 1, § 1, art. 4, and provides that the "senate shall
be a court with full authority to hear and determine all
impeachments made by the house of representatives, against
any officer or officers of the commonwealth." Part II, c. 1,
§ 2, art. 8. See also § 3, art. 6. See *Opinion of the Jus-
tices*, 167 Mass. 599; *Attorney General* v. *Tufts*, 239 Mass.
458, 478–481; *Attorney General* v. *Pelletier*, 240 Mass. 264,
294; *Attorney General* v. *Brissenden*, 271 Mass. 172, 179–180.
These constitutional provisions are controlling in cases to
which they are applicable notwithstanding the provision of
art. 30 of the Declaration of Rights that "the legislative
department shall never exercise the executive and judicial
powers, or either of them." The powers explicitly con-
ferred upon the General Court or either branch thereof by
the constitutional provisions above referred to, however,
cannot be delegated. *Attorney General* v. *Brissenden*, 271
Mass. 172, 180. The bill, if enacted in any of the proposed
forms, would not and could not amount to an exercise of
the power to "name and settle" civil officers conferred
upon the General Court.

The executive nature of the powers to appoint and to
remove officers, however, does not import that, in the
absence of express constitutional provisions to the con-
trary, provision may not be made for election of such offi-
cers by the people, or that these powers can be exercised
only by the Governor, the "supreme executive magistrate,"
or by the Governor with the advice of the Council estab-
lished "for advising the governor in the executive part of
government." Constitution, Part II, c. 2, § 3, art. 1.

The General Court is authorized to provide by law for "naming and settling" civil officers. Part II, c. 1, § 1, art. 4. The power of appointment which may be conferred under this authority, like its correlative power of removal (see *Opinion of the Justices*, 300 Mass. 596, 600), may be conferred by law upon officers or boards other than the Governor or the Governor and Council. *Brown* v. *Russell*, 166 Mass. 14. *Opinion of the Justices*, 167 Mass. 599, 600. *Attorney General* v. *Tufts*, 239 Mass. 458, 478–480, and cases cited. *Bradley* v. *Zoning Adjustment Board of Boston*, 255 Mass. 160, 164–170.

It is settled, however, that this power of appointment may not be conferred by the General Court upon the courts — the judicial department — with respect to officers or boards not exercising a function that is judicial or incidental to the exercise of judicial powers without violation of the provision of said art. 30, relating to the separation of powers, that "the judicial [department] shall never exercise the legislative and executive powers, or either of them." *Case of Supervisors of Election*, 114 Mass. 247. See, as to the correlative power of removal, *Opinion of the Justices*, 300 Mass. 596. See also *Attorney General* v. *Tufts*, 239 Mass. 458, 478–481; *Worcester County National Bank, petitioner*, 263 Mass. 444, 456–458.

The limitation imposed by said art. 30 upon the exercise by the judicial department of executive powers is not more definitely expressed than is the limitation thereby imposed upon the exercise of such powers by the legislative department. These limitations, though sometimes difficult of application, must be scrupulously observed. *Worcester County National Bank, petitioner*, 263 Mass. 444, 457–458. *Boston* v. *Curley*, 276 Mass. 549, 559–560. The members of the commission or committee provided for by the bill and the proposed amendments thereto, for reasons previously stated, are entrusted with the exercise of executive or administrative powers which are not incidental to the exercise of legislative powers. The power of appointment of such members conferred by the bill and a proposed amendment thereto upon the President of the Senate and

the Speaker of the House of Representatives is, in our opinion, an executive power within the meaning of said art. 30. On the other hand, the President and the Speaker are officers of the legislative department (see Constitution, Part II, c. 1, § 2, art. 7; § 3, art. 10) just as fully as judges of the courts are officers of the judicial department. The powers of appointment conferred by the bill and an amendment thereto are conferred upon these officers of the General Court solely by virtue of their offices. The functions of such officers are exclusively legislative. Though the law-making power and any other power explicitly reposed in the General Court may not be delegated to them, they participate in the exercise of such powers and may have conferred upon them particular duties in the performance of or incidental to such powers. But we are of opinion that to confer upon such purely legislative officers the executive power of appointment of members of the commission or committee provided for by the bill and an amendment thereto, whether or not such members are required to be chosen from among members of the General Court, would be violative of said art. 30 as authorizing the legislative department to exercise executive powers. See *People* v. *Tremaine*, 252 N. Y. 27, 43–45, 56–60.

Moreover, since a position on the commission or committee created by the bill in any of the forms proposed would be an "office" within the meaning of art. 65 of the Amendments, it follows that, if the bill was enacted in any of these forms by the present General Court, a person elected to this General Court could not be appointed a member of such a commission or committee during the term for which he was elected.

In view of the principles stated, we answer the questions submitted as follows:

The answer to the first question is "No," solely because of the manner in which the special recess body is constituted.

The answer to the second question is that the bill provides for the exercise of executive power by the recess body and that the General Court cannot, in view of art. 30, establish such a body constituted as provided in the bill.

The answer to the third question with respect to the bill amended as proposed therein is the same as the answer to the second question.

The answer to the fourth question is "Yes."

The answers to the fifth and sixth questions are that the bill does not provide for the exercise of legislative powers by the recess body.

The answer to the seventh question is that it is not material that the "unforeseen conditions" be described as in the question submitted.

The answer to the eighth question is "Yes."

The answers to the ninth and tenth questions are that it is immaterial with respect to the validity of the bill which of the descriptions of "unforeseen conditions" is adopted, and that the constitutionality of the bill in either form depends upon the manner in which the recess body is constituted.

FRED T. FIELD.
CHARLES H. DONAHUE.
HENRY T. LUMMUS.
STANLEY E. QUA.
ARTHUR W. DOLAN.
LOUIS S. COX.
JAMES J. RONAN.