OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, Expenditure of public money, Public purpose, Opinions of the Justices. *Political Committee. Public Officer.*

The Justices declined to give their opinions to a branch of the General Court on an abstract question of law not relating to a pending bill. [798]

A question propounded to the Justices by a branch of the General Court, whether an appropriation of money from the General Fund to be paid to the State committees of the political parties in certain proportions and to be used to defray in part the cost of State wide political campaigns of candidates of the parties in the next State election would be for a public purpose, was answered in the negative by WILKINS, C.J., and SPALDING, WHITTEMORE, CUTTER, KIRK, and REARDON, JJ., and in the affirmative by SPIEGEL, J. [800–801]

The State committee of a political party is not a public body and is not composed of public officers. [799–800]

On April 1, 1964, the Justices submitted the following answers to questions propounded to them by the House of Representatives.

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

The undersigned Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House on March 19, 1964, and submitted to the Justices on March 24. The order refers to House No. 1482, which is now pending before the House, and was the subject of an advisory opinion on March 2. See *Opinion of the Justices, ante*, 789.

The bill is entitled, "An Act appropriating a sum of money to be paid to certain political parties for the purpose of defraying part of the cost of the political campaign of such parties in the next state election." The act reads: "There is hereby appropriated from the General Fund the sum of two hundred thousand dollars which shall be paid

over to the state committee of each political party in that proportion which the vote cast by each such party in the last state primary bore to the total vote cast therein.   Funds so paid shall be used to defray in part the cost of the political campaigns of each such party for the next biennial state election on behalf of candidates to be voted for by all the voters of the commonwealth.''

The order states, ''Grave doubt exists as to the constitutionality of said bill, if enacted into law.''

The questions are:

''1.   Is it constitutionally competent for the General Court to enact legislation appropriating public funds for the purpose of contributing the same to the state committee of each political party to defray in part the cost of the political campaign of each such party prior to a biennial state election?

''2.   Would the appropriation and disbursement of money, raised by taxation for the purposes provided in said bill, be for a public purpose?''

The first question presents an abstract question of law. We lack jurisdiction under the Constitution, Part II, c. 3, art. 2, to answer except as to the pending bill.   *Opinion of the Justices,* 309 Mass. 631, 641.   *Opinion of the Justices,* 313 Mass. 779, 781.   *Opinion of the Justices,* 341 Mass. 753, 759.   See *Opinion of the Justices,* 301 Mass. 615, 617.   The Justices have always felt that they cannot be required to answer general questions as to constitutionality even with reference to a specific bill.   *Opinion of the Justices,* 328 Mass. 679, 691.   *Opinion of the Justices,* 333 Mass. 773, 782. *Opinion of the Justices, ante,* 789, 791.

The general principle of constitutional law as to what is a public purpose for which money raised by taxation can be used has been frequently declared.   *Opinion of the Justices,* 231 Mass. 603, 611.   *Opinion of the Justices,* 313 Mass. 779, 783.   *Opinion of the Justices,* 320 Mass. 773, 775.   *Eisenstadt* v. *County of Suffolk,* 331 Mass. 570, 573–574.   ''The paramount test should be whether the expenditure confers a

direct public benefit of a reasonably general character, that
is to say, to a significant part of the public, as distinguished
from a remote and theoretical benefit." *Opinion of the
Justices*, 337 Mass. 777, 781. "Each case must be decided
with reference to the object sought to be accomplished and
to the degree and manner in which that object affects the
public welfare." *Allydonn Realty Corp.* v. *Holyoke Hous-
ing Authy.* 304 Mass. 288, 292.

In *Opinion of the Justices*, 337 Mass. 777, 784, the view
was expressed that money could not be appropriated to be
expended by various organizations most of which were com-
posed of individuals who were interested in some war or a
branch of the armed services. It was pointed out that these
groups were neither public bodies nor made up of public
officers, and that their individual members were accountable
solely to their own respective organizations and had no con-
nection with any branch of government in which the sov-
ereign power is lodged by our Constitution.

The same objection holds as to a State Committee of a
political party, which is defined by statute as "a party which
at the preceding biennial state election polled for governor
at least three per cent of the entire vote cast in the common-
wealth for that office." G. L. c. 50, § 1 (as amended by
St. 1951, c. 805, § 4). Obviously no portion of the sovereign
power has been delegated to such a committee whose duties
are confined to the government of its own political party
which it represents and which alone is interested in the per-
formance of those duties.

This question is not an open one under our decisions. In
*Attorney Gen.* v. *Drohan*, 169 Mass. 534, it was held that
membership on the Democratic City Committee of Boston
was not a public office. What was there said, at pages 535–
536, is particularly pertinent: "Except for the fact that
several acts have been passed by the Legislature which re-
late, amongst other things, to political committees, no one
would contend, we presume, that the members of a political
committee belonging to one of the political parties hold pub-
lic office by reason of their being members of such commit-

tee.   We do not think that the effect of these statutes has
been or is to make that a public office which was not one
before their enactment.   Without attempting an exhaustive
definition of what constitutes a public office, we think that
it is one whose duties are in their nature public, that is,
involving in their performance the exercise of some por-
tion of the sovereign power, whether great or small, and
in whose proper performance all citizens, irrespective of
party, are interested, either as members of the entire body
politic, or of some duly established division of it.   *Brown* v.
*Russell,* 166 Mass. 14. . . .   Manifestly, membership in a
political committee belonging to one party or another does
not come within the above description of what constitutes
public office.   The fact that the Legislature has deemed it
expedient to regulate by statute the election and conduct of
political committees does not make the office a public one.
The members of them continue to be, as before, the officers
of the party which elects them, and their duties are confined
to matters pertaining to the party to which they belong, and
which alone is interested in their proper performance.''

The case has been cited with approval here and in most of
the decisions from other jurisdictions cited *infra.*   See *At-
torney Gen.* v. *Tillinghast,* 203 Mass. 539, 543–544; *Robert-
son* v. *Commissioner of Civil Serv.* 259 Mass. 447, 449; *Kid-
der* v. *Mayor of Cambridge,* 304 Mass. 491, 497.   See also
5 Op. Atty. Gen. 614, 615–616; 7 Op. Atty. Gen. 350, 351.

The prevailing view elsewhere is that an officer or mem-
ber of a political committee is not a public officer.   *Morris*
v. *Peters,* 203 Ga. 350, 357–359.   *People* v. *Brady,* 302 Ill.
576, 581–583.   *Attorney Gen.* (*ex rel. Broderick*) v. *Barry,*
74 N. H. 353, 354.   *Commonwealth ex rel. Koontz, Dist.
Atty.* v. *Dunkle,* 355 Pa. 493.   *Greenough, Atty. Gen., ex rel.
Dwyer* v. *Lucey,* 28 R. I. 230, 231–232.   *Heiskell* v. *Ledger-
wood,* 144 Tenn. 666, 674–675.   *Carter* v. *Tomlinson,* 149
Texas, 7, 14.   18 Am. Jur., Elections, §§ 139, 156.   29 C. J. S.,
Elections, §§ 84, 85, 87.

The appropriation and the disbursement of tax money by
the State committees as proposed by the pending bill would

not be for a public purpose. To the second question we answer, "No."

> RAYMOND S. WILKINS
> JOHN V. SPALDING
> ARTHUR E. WHITTEMORE
> R. AMMI CUTTER
> PAUL G. KIRK
> PAUL C. REARDON

To the Honorable the House of Representatives of the Commonwealth of Massachusetts:

I agree with the opinion signed by the majority of the Justices that "[t]he first question presents an abstract question of law."

However, I am unable to agree that the appropriation and disbursement of money, raised by taxation for the purposes provided in House No. 1482, would not be for a "public purpose." It seems to me that a rational purpose to be attributed to this bill is that of enabling candidates of modest means to seek State wide public office; conceivably its ultimate purpose is to improve the calibre of persons holding office by enabling them to be chosen from a broader section of the population. It is essential to our form of government that the opportunity to hold office be as nearly equal as possible among all citizens. The basic concept of governmental contribution to political campaigns has been considered and accepted by various distinguished political scientists.[1] In broad terms the question we are called upon to answer is whether under its Constitution Massachusetts may enact a practical version of this concept.

The case of *Attorney Gen.* v. *Drohan,* 169 Mass. 534, 535–536, held in another context that members of the Democratic City Committee of Boston were not public officers. The holding of this case seems to me correct. I also have no quarrel with the general principle of law stated in the *Opin-*

---

. [1] See, e.g., A Primary Fee to Finance Politics by Peter H. Odegard, Professor of Political Science at the University of California at Berkeley; The Costs of Democracy by Alexander Heard, Chancellor, Vanderbilt University.

*ion of the Justices,* 337 Mass. 777, 781, that "[t]he paramount test [of whether a legislative expenditure is for a public purpose] should be whether the expenditure confers a direct public benefit of a reasonably general character, that is to say, to a significant part of the public, as distinguished from a remote and theoretical benefit." But I am not in accord with the conclusion (implicit in that opinion) that a "public benefit of a reasonably general character" is conferred only when disbursements are made by "public bodies" or "groups . . . made up of public officers." I find nothing in the Constitution or in previous decisions of this court to justify such a ruling. On the contrary, this court has said, "Many enterprises of the highest public utility are productive of great and immediate benefits to individuals. A railroad or canal may largely enhance the value of private property . . . but it is not for that reason any less a public work, *for the construction of which private property may well be taken.* We are therefore to look further into the probable operation and effect of the statute in question, in order to ascertain whether some public interest or benefit may not be likely to accrue from the execution of the power conferred by it . . . . If any such can be found, then we are bound to suppose that the act was passed in order to effect it." "If it is lawful and constitutional to advance the manufacturing or mechanical interests of a section of the State *by allowing individuals acting primarily for their own profit to take private property,* there would seem to be little, if any, room for doubt as to the authority of the legislature . . . to make a similar appropriation . . . ." (emphasis supplied). *Talbot* v. *Hudson,* 16 Gray, 417, 423–424, 427. *Boston & Roxbury Mill Corp.* v. *Newman,* 12 Pick. 467, 475, 476, 480. *Hazen* v. *Essex Co.* 12 Cush. 475, 478. *Freeland* v. *Hastings,* 10 Allen, 570, 575–577. See *Dodge* v. *Prudential Ins. Co.* 343 Mass. 375, 383–384.

With reference to the conclusion reached in the *Opinion of the Justices,* 337 Mass. 777, 784, it seems to me that the State committee of a major political party is hardly to be

analogized to a commission to commemorate the Civil War centennial. The latter could be appointed by officers of the Commonwealth and made responsible thereto; presumably the officers of the Commonwealth are as competent to choose appropriate members for an historical commission as private associations are. On the other hand, the Legislature may believe that State committees are the only competent bodies to apportion and disburse funds on behalf of their respective State wide candidates. In that event the purpose of the proposed legislation could not be realized unless the Commonwealth were to choose the governing committees of political parties. Such a suggestion is obviously impracticable and probably unconstitutional. This is tantamount to a statement that the purpose of the statute may never be realized.

Undoubtedly, reasonable men could differ on the issue of whether this particular bill is the best possible solution to the problem. The relative merits of other plans for achieving the desired result is a question of legislative policy. *Mulligan* v. *Hilton,* 305 Mass. 5, 13–14. *Commonwealth* v. *Ferris,* 305 Mass. 233, 236. *Roschen* v. *Ward,* 279 U. S. 337, 339.

Basically our government has evolved into a two party system. Each political party elects among its enrolled members a State committee consisting of one man and one woman from each senatorial district. G. L. c. 52, § 1. Although this court has held that they are not "public officers," it is well known that they play a prominent role in the election of persons to State wide office. I do not believe that the legislation is unconstitutional because the funds are to be disbursed by duly elected State committees rather than by "public officers." Accordingly, I would answer the second question "Yes."